**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

UNITED STATES OF AMERICA                CRIMINAL ACTION NO. 10-00230-01/
                                        03/04

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

JECARLOS MONTRAE CARTER,                MAGISTRATE JUDGE HORNSBY
RAMON TERRELL DANIELS, AND
TENISHA DESHEA CARTER

**MEMORANDUM ORDER**

Before the Court is a Motion to Exclude Tapes and Transcripts filed by Defendant

Ramon Terrell Daniels ("Daniels"). See Record Document 216.[1]  Daniels "contends a

number of the conversations in which he is alleged to have participated are unintelligible

in such a significant part that it would [be] impossible to transcribe them without an

independent recollection of the conversations and the tapes should be inadmissible in their

entirety." Id. at 1.   Daniels specifically challenges the admissibility of the taped

conversations between himself and co-defendant JeCarlos Carter, arguing that the tapes

are unintelligible. See id. at 2.  The tapes are identified as Sessions 803, 824, 878, 904,

and 1447. See id.  Daniels asks the undersigned "to listen to the relevant tapes and then

prohibit the government from admitting tapes of conversations which are substantially

unintelligible as well as admitting transcripts of other which are, in fact, only partial and

erroneous transcripts due to the vast portions which are unintelligible." Id. at 3.

The Government opposed the motion.  See Record Document 220.   The

Government first advised that it did not intend to use Sessions 878 or 1447 in its case in

---

[1]The motion was also joined by Defendants JeCarlos Montrae Carter ("JeCarlos
Carter") and Tenisha Deshea Carter ("Tenisha Carter"). See Record Documents 224, 225,
231, and 232.

chief; thus, the Court must only  consider the admissibility of Sessions 803, 824, and 904. See id. at 3.  The total length of Session 803 is 3:07 minutes and the length of the clipped conversation[2] to be played at trial is 2:26 minutes.  See id.  The total length of Session 824 is 10:54 minutes and the length of the clipped conversation to be played at trial is 1:04 minutes.  See id.  The total length of Session 904 is 8:22 minutes and the length of the clipped conversation to be played at trial is 0:47 seconds.  See id.  The Government contends that the audio recordings in this case are not so unintelligible as to render the entire recordings untrustworthy.

The Fifth Circuit "has consistently held that poor quality and partial unintelligibility do not render tapes inadmissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy, and that this determination is left to the sound discretion of the trial judge." United States v. Stone, 960 F.2d 426, 436 (5th Cir. 1992).  Our Circuit has also recognized that it may be of help to the jury to allow it to read a transcript while listening to a tape recording. See United States v. Wilson, 578 F.2d 67, 69 (5th Cir.1978). Transcripts are admissible to aid the jury in understanding a recording, including cases in which "the transcript may be helpful either to identify the speakers or to understand portions which are difficult to hear." Id.  The determinations of whether the tape as a whole is untrustworthy and whether the jury should be allowed to use a transcript are determinations left to the sound discretion of the trial court.  See United States v. Lance, 853 F.2d 1177, 1181 (5th Cir.1988); United States v. Onori, 535 F.2d 938, 947-948 (5th

_____

[2]In its opposition, the Government explained that it has clipped relevant portions of the conversations because "some of the conversations are long and have portions that are irrelevant as well as portions that are inadmissible for other reasons (discussing being on probation or alluding to prior felonies)."  Record Document 220 at 7.

Cir.1976) (holding that transcripts given to the jury are evidence, admitted for a limited purpose, and that therefore a determination of the transcript's accuracy is typically a jury function rather than a judicial one constituting a precondition to admission.).

In Stone, the defendants argued, among other things, "that the tapes' unintelligibility rendered the district court's admission of the tapes an abuse of discretion" and "that the district court compounded its error by wrongfully allowing use of the transcripts." Stone, 960 F.2d at 435-436.   The defendants maintained "that so much of the tape was unintelligible that no reliable transcript could be made." Id. at 437.[3] The Fifth Circuit found no abuse of discretion in the admission of the tapes in Stone, "particularly given the precautions taken by the court when they were played, [i.e., the issuance of limiting instructions]." Id. at 436.   In upholding the district court's admission of the tapes and transcripts, the Fifth Circuit reasoned:

> However, the district court in this case went considerably beyond the minimum procedure set forth in Onori.  At the beginning of trial, the district court had before it the defendants' motion to make an *in camera* determination of the accuracy of the government's transcripts, and, if it found them to be inaccurate, to suppress them.  In the conference immediately prior to the beginning of trial, the judge informed counsel that he had listened to the tape given him and had read the transcript, and that he was denying the motion to suppress the transcript. He indicated, though, that the jury would receive a thorough instruction as to the weight to give the transcript. On the second day of trial, when the defendants renewed their objection as the tapes were about to be played, the district court stated:  "I listened to the tape myself, compared it to the transcript, and it was my determination that it is not so unintelligible that someone familiar with the transaction could not

---

[3]"The situation of Stone . . . was in some ways distinct from the situation contemplated in Onori."  Stone, 960 F.2d at 437.  The Onori case "described an instance in which the defendants alleged specific errors in the government's transcript."  Id., citing Onori, 535 F.2d at 948.  In Stone, "however, the defendants' contention was that so much of the tape was unintelligible that no reliable transcript could be made.  To place upon them the burden of coming forward with their own transcript would be to require of them what they contended could not be done."  Stone, 960 F.2d at 437.

have made a transcript that was just for the jury's consideration." . . .

We conclude that the district court's handling of the situation was within its discretion.  Its finding that a reliable transcript could have been made by someone familiar with the conversation was a direct consideration and rejection of the objection raised by the defendants, and put the case back into the posture contemplated in Onori:  it was the province of the jury to decide whether the government's transcript was accurate, and the obligation of the defendants to raise specific challenges to the transcript before the jury.  Moreover, the district court gave a thorough limiting instruction to the jury, which the Onori decision indicates is "the key to protecting a defendant's rights in this situation."  Onori, 535 F.2d at 949.

Stone, 960 F.2d at 437-438.

Here, the Court has listened to both the full and clipped versions of Sessions 803, 824, and 904.  There are some words on the recordings that are unintelligible, but these are relatively few. Most importantly, no significant portions of the conversations are lost. For the most part, the voices can be heard and the words can be made out.  Thus, based on the foregoing, the Court finds that the unintelligible are not so substantial as to render the recording as a whole untrustworthy.  See Stone, 960 F.2d 426, 436 (5th Cir. 1992).

The undersigned has likewise read the corresponding transcripts prepared by the Government and compared the transcripts to the tapes.  As stated previously, the tapes as a whole are trustworthy and the jury should be allowed to use the transcripts as aids in understanding the recordings.  The Court will admit the transcripts subject to the limiting instruction set forth in Fifth Circuit Pattern Instruction 1.42:

Exhibit _____ has been identified as a typewritten transcript of the oral conversation which can be heard on the tape recording received in evidence as Exhibit _____.  The transcript also purports to identify the speakers engaged in such conversation.
I have admitted the transcript for the limited and secondary purpose of aiding you in following the content of the conversation as you listen to the tape recording, and also to aid you in identifying the speakers.
You are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the

speakers is entirely for you to determine based upon your own evaluation of the testimony you have heard concerning the preparation of the transcript, and from your own examination of the transcript in relation to your hearing of the tape recording itself as the primary evidence of its own contents; and, if you should determine that the transcript is in any respect incorrect or unreliable, you should disregard it to that extent.

This instruction will be read when the tapes are played and again in the final charge. Moreover, the Court notes that the tapes in this case are not so inaudible that "the transcripts would tend to become the evidence." United States v. Howard, 961 F.2d 1571 (5th Cir. 1992) (unpublished table decision), *reprinted in* United States v. Murray, 988 F.2d 518, 523 (5th Cir. 1993).  Rather, while certain portions of the tapes are not ideal, the recordings as a whole are "clear enough to allow the jurors . . . to determine whether the transcript was faithful to the words being spoken." Id.  Additionally, Daniels and his co-defendants are free to produce their own transcripts of the conversations and/or to vigorously cross-examine the agent as to his interpretation of the transcripts.

Accordingly,

**IT IS ORDERED** that the Motion to Exclude Tapes and Transcripts filed by Defendant Ramon Terrell Daniels (Record Document 216), and adopted by Defendant JeCarlos Montrae Carter and Tenisha Deshea Carter (Record Document 232), be and is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 18th day of July, 2011.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE